Christopher N. Coyle, OSB #073501
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Craig A. Albert (Admitted Pro Hac Vice)
Catherine B. Baldo (Admitted Pro Hac Vice)
CHERRY PETERSEN LANDRY ALBERT LLP
8350 N. Central Expressway, Ste. 1500
Dallas, TX 75206
Telephone: 214-265-7007
Fax: 214-265-7008

     Attorneys for VL Wallace Investments, LLC d/b/a Transworld
     Business Advisors of North DFW

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 21-31157-dwh7 |
| Tiffany A. Tavernier, | |
|     Debtor. | |
| VL Wallace Investments, LLC d/b/a Transworld Business Advisors of North DFW, | Adv. Proc. No. _____ |
|     Plaintiff, | |
| v. | COMPLAINT (Non-Dischargeability) |
| Tiffany A. Tavernier, | |
|     Defendant. | |

Plaintiff VL Wallace Investments, LLC d/b/a Transworld Business Advisors of North DFW ("Plaintiff") files this Complaint against Defendant-Debtor Tiffany A. Tavernier and alleges as follows:

## PARTIES

1. Plaintiff VL Wallace Investments, LLC d/b/a Transworld Business Advisors of North DFW is a Texas limited liability company with its principal place of business in Collin, County, Texas and a creditor in the above-captioned bankruptcy case.

2. Defendant Tiffany A. Tavernier ("Defendant") is the debtor in the above-captioned Chapter 7 case. Defendant may be served in accordance with F.R.B.P. 7004(b)(9) by mailing a copy of the summons and complaint to the Defendant at the address shown in the petition or to such other address as the Defendant may designate in a filed writing. Pursuant to F.R.B.P. 7004(g), service shall also be made upon the Defendant's attorney pursuant to Federal Rule of Civil Procedure 5(b).

## JURISDICTION

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I), and (J). The matters in controversy arise under 11 U.S.C. § 523.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

6. The United States Bankruptcy Court for the District of Oregon may enter a final judgment resolving all issues raised by Plaintiff.

7. On May 19, 2021, Defendant filed her voluntary petition for Chapter 7 bankruptcy.

8. By means of this Complaint, Plaintiff is seeking that the debt described in the foregoing paragraphs be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

## FACTUAL BACKGROUND

9. Before the filing of the bankruptcy petition, on May 15, 2018, Plaintiff purchased the business brokerage franchise called Transworld Business Advisors of North DFW ("Transworld North DFW") including its assets from its former owner Defendant Tiffany A. Tavernier. The terms of the transaction were memorialized in a particular Purchase Agreement between Tiffany A. Tavernier f/k/a Tiffany Swartz and Swartz Brokerage, LLC (collectively as "Seller") and Vicki Wallace and Plaintiff VL Wallace Investments, LLC (collectively as "Purchaser").

10. As an integral part of the sale transaction and in support of the premium amount paid for the purchase of these assets, Defendant as Seller entered into a non-compete covenant with Plaintiff memorialized in Section 14(e) of the Purchase Agreement. Specifically, Plaintiff paid a premium for assurance that Defendant would be working with Plaintiff (as a producing salesperson) rather than competing against Plaintiff.

11. Additionally, Defendant entered into an Independent Contractor Agreement Between Broker and Salesperson ("Independent Contractor Agreement") on May 15, 2018, which included a non-compete covenant with Plaintiff by which Defendant agreed not to compete with Plaintiff within the State of Texas in the business brokerage industry for the term of the agreement (May 15, 2018 to May 15, 2023) and for five (5) years thereafter.

12. From November 2018, Scott Hartman[1], Defendant's close friend and co-conspirator, has through his firm Advantage Business Brokers, LLC ("Advantage") provided Defendant with a platform to compete with Plaintiff in the business brokerage industry, in violation of the clear

---

[1] Scott Hartman and his company Hartman Investments, LLC filed voluntary petitions for Chapter 7 bankruptcy on December 2, 2020 in the United States Bankruptcy Court for the Northern District of Texas-Dallas Division. Plaintiff filed Adversary Proceeding No. 21-03013-hdh against Scott Hartman on March 5, 2021. The docket call for that adversary proceeding is set for October 25, 2021.

terms of the non-compete covenants in the Purchase Agreement and the Independent Contractor Agreement.

13. With the aid of Scott Hartman, Defendant has caused and continues to cause severe financial harm to Plaintiff by: (1) stealing Plaintiff's listings for the sale of client businesses; and (2) otherwise usurping Plaintiff's business brokerage opportunities.

14. Defendant committed these acts with an objective substantial certainty of harm or a subjective motive to cause harm to Plaintiff as a direct competitor to Advantage. Further, Defendant committed these acts in violation of the terms of the Purchase Agreement and Independent Contractor Agreement while Defendant was supposed to be acting as a salesperson of Plaintiff.

15. As a result of these acts, on May 7, 2020, Plaintiff filed a lawsuit in the 134th Judicial District Court, Dallas County, Texas against Defendant; Hartman Investments, LLC; Tiffany Swartz; Swartz Brokerage, LLC; and Advantage Business Brokers, LLC for numerous claims. Transworld's claims against Defendant (and her company Swartz Brokerage, LLC) specifically included breach of contract, breach of fiduciary duty, malicious conversion of personal property, violation of the Texas Theft Liability Act, business disparagement, and civil conspiracy. A true and correct copy of Plaintiff's First Amended Petition is attached hereto as **Exhibit A** and is hereby incorporated by reference.

16. Before Plaintiff could fully adjudicate its claims against Defendant in state court by conducting a hearing making its interlocutory default judgment into a final judgment, on May 19, 2021, Defendant filed her voluntary petition for Chapter 7 bankruptcy. Transworld is named a creditor in Defendant's bankruptcy proceeding.

17. On August 3, 2021, Plaintiff conducted the Rule 2004 examination of Defendant. At the examination, Defendant's testimony provided additional evidence of her acts of directly

competing with Plaintiff in violation of the non-compete covenants in the Purchase Agreement and Independent Contractor Agreement.

18. The compensation obtained by Defendant from the sales transactions closing from November 2018 to May 18, 2021[2] (the "Debt") was incurred through (1) embezzlement/larceny; and (2) willful and malicious injury by Defendant which caused harm to Plaintiff. As a result, the Debt must be declared non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

## FIRST CLAIM FOR RELIEF
### 11 U.S.C. § 523(a)(4) – Larceny/Embezzlement

19. Plaintiff realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

20. Plaintiff owned, possessed, and had the right to possession of particular property. Specifically, Plaintiff owned two computer monitors and a mirror located at Plaintiff's offices. Further, Plaintiff owned the confidential business forms for use in the business brokerage industry including Plaintiff's forms entitled: Business Profile / Seller Questionnaire; Marketing Agreement; and Broker Confidentiality Agreement. Plaintiff also possessed listings for the sale of Plaintiff's client's businesses and had the right of possession of potential listings that were initiated by Defendant pursuant to the terms of the Purchase Agreement and Independent Contractor Agreement.

21. Upon an argument with Plaintiff's principal, Defendant wrongfully took the two computer monitors and mirror from Plaintiff's offices. Defendant also wrongfully copied nearly word-for-word, line-by-line Plaintiff's confidential business forms for use at Advantage. Finally, Defendant stole listings that rightfully belonged to Plaintiff from November 2018 to May 19,

---

[2] Defendant filed for bankruptcy on May 19, 2021.

Page 5 of 8          COMPLAINT (Non-Dischargeability)

2021 in violation of the non-compete covenants in the Purchase Agreement and Independent Contractor Agreement.

22. Defendant took Plaintiff's property with the intent to convert it or deprive Plaintiff of the same.

23. As such, Defendant's wrongful conduct constitutes larceny under federal law.

24. In the alternative, Defendant had the right to use the two computer monitors, mirror, and confidential business forms in her capacity as a salesperson of Plaintiff. Further, Defendant had the right to close listings that were clients or potential clients of Plaintiff and present potential buyers of businesses in Defendant's capacity as a salesperson of Plaintiff.

25. However, Defendant stole the two computer monitors, mirror, confidential business forms, and listings that rightfully belonged to Plaintiff pursuant to the terms of the Purchase Agreement and Independent Contractor Agreement. As a result, Defendant appropriated the property to a use other that which it was entrusted—for Defendant's personal benefit and for the benefit of Plaintiff's competitor Advantage.

26. As such, alternatively, Defendant's wrongful conduct constitutes embezzlement under federal law.

27. Because Defendant incurred the Debt through larceny, or in the alternative embezzlement, the Debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## SECOND CLAIM FOR RELIEF
### 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury

28. Plaintiff realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

29. Defendant committed the following acts which caused substantial financial harm to Plaintiff: (1) copying confidential business forms of Plaintiff; (2) stealing Plaintiff's listings for the sale

Page 6 of 8          COMPLAINT (Non-Dischargeability)

of client businesses; (3) stealing Plaintiff's personal property; and (4) usurping Plaintiff's business brokerage opportunities through the Advantage platform including the presentation of potential buyers of businesses. The foregoing acts were prohibited by the clear terms of the Purchase Agreement and Independent Contractor Agreement.

30. Defendant committed the above-referenced acts with the subjective motive to cause harm to Plaintiff or with objective substantial certainty that it would cause harm to Plaintiff. As such, the above-referenced acts are "willful and malicious."

31. As a result of Defendant's acts, Plaintiff suffered financial injury. Specifically, Plaintiff lost commissions from the sales transactions that were closed by Defendant during the period of November 2018 to May 18, 2021 (the "Debt").

32. Further, the injury was not substantially justified.

33. Because Defendant incurred the Debt through willful and malicious injury to Plaintiff, the Debt is non-dischargeable pursuant to § 523(a)(6).

34. Plaintiff should be entitled to recover its reasonable and necessary attorney's fees pursuant to the Purchase Agreement and Independent Contractor Agreement.

35. **WHEREFORE,** Plaintiff prays for judgment against Defendant in in favor of Plaintiff as follows:

    a. On the First Claim for Relief, adjudging Defendant liable for an amount to be determined at trial and that such amount is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

    b. On the Second Claim for Relief, adjudging Defendant liable for an amount to be determined at trial and that such amount is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

c.  For Plaintiff's reasonable attorney fees, costs and disbursements incurred herein; and

d.  For such other and further relief, both in law and in equity, to which Plaintiff may be
justly entitled.

Respectfully submitted:

By: /s/ Craig A. Albert
        Craig A. Albert (Admitted Pro Hac Vice)
        Catherine B. Baldo (Admitted Pro Hac Vice)
        Christopher N. Coyle, OSB #073501

Attorneys for VL Wallace Investments, LLC d/b/a
Transworld Business Advisors of North DFW

# Exhibit A

FILED
7/2/2020 12:54 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Belinda Hernandez DEPUTY

## CAUSE NO. DC-20-06544

| | | |
|---|---|---|
| **VL WALLACE INVESTMENTS, LLC dba TRANSWORLD BUSINESS ADVISORS OF NORTH DFW** | § § § § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § § | |
| **v.** | § § | **134th JUDICIAL DISTRICT** |
| **TIFFANY SWARTZ aka TIFFANY YORDY nka TIFFANY TAVERNIER; SWARTZ BROKERAGE, LLC; SCOTT W. HARTMAN; HARTMAN INVESTMENTS LLC; and ADVANTAGE BUSINESS BROKERS, LLC** | § § § § § § | |
| **Defendants.** | § § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFF'S FIRST AMENDED PETITION
## (INCLUDING APPLICATION FOR TEMPORARY & PERMANENT INJUNCTIONS)

TO THE HONORABLE COURT:

Plaintiff VL Wallace Investments, LLC dba Transworld Business Advisors of North DFW ("Plaintiff") files its First Amended Petition against Defendants Tiffany Swartz aka Tiffany Yordy nka Tiffany Tavernier; Swartz Brokerage, LLC; Scott W. Hartman; Hartman Investments, LLC; and Advantage Business Brokers, LLC (collectively "Defendants"), and respectfully shows as follows:

## I.
## DISCOVERY

1.      Discovery should be conducted under Level Two pursuant to Rule 190.

## II.
## RULE 47 STATEMENT

2.      As prescribed by Rule 47, in addition to injunctive relief, Plaintiff seeks monetary

# Exhibit A

relief over $1,000,000.

## III.
## SUMMARY OF CASE

3.      In May 2018, Tiffany Swartz sold the assets of her business brokerage company to Plaintiff.  As the most important part of the sale transaction, Ms. Swartz agreed not to compete within the State of Texas and for reasonable length of time.  In the negotiated price for the business, Plaintiff paid a premium for this assurance that Ms. Swartz would be with her (as a producing Salesperson) rather than competing against her.

4.      As is a common practice in such asset sales of an operating business, the continued (and even enhanced) production of the Seller is the most significant single influencer over the price.  Without that commitment, the business itself was worthless, as it was saddled with debt and was without any meaningful producer other than Ms. Swartz.

5.      Not just the Purchase Agreement, but also the Independent Contractor Agreement establishes this fully-enforceable obligation on the part of Ms. Swartz not to compete with the business that she just sold to Plaintiff.  As a corollary to the non-compete covenants, she also committed to the confidentiality of the Purchased Assets.

6.      Despite these enforceable commitments, by late July 2018 (at the latest), it now appears that Ms. Swartz hatched her plan to steal the customers and confidential information of Plaintiff, and to go into competition with Plaintiff, with the help of her new best friend Scott W. Hartman.  In or about November 2018, Mr. Hartman caused his company Hartman Investments to buy a competing business brokerage firm Advantage Business Brokers, seemingly to allow Ms. Swartz to "straddle the fence" to toss over the ill-gotten fruit "picked from the tree" of Plaintiff.

7.      Armed with the help of her email address with Plaintiff and Plaintiff's contacts and forms, as well as the support of her newly-anointed life-long friend (Mr. Hartman), Ms. Swartz

Case 21-03030-dwh    Doc 1    Filed 08/16/21

# Exhibit A

has now raided Plaintiff's business (falsely anointing herself on LinkedIn as "CEO at Transworld Business Advisors of North DFW"). As a result, Plaintiff seeks intervention of this Court to impose an injunction and to recover damages, including the disgorgement of profit and forfeiture of fees, from all of Defendants, as all have knowingly aided in this grand fiduciary breach.

## IV.
## PARTIES AND SERVICE

8.  Plaintiff VL Wallace Investments, LLC dba Transworld Business Advisors of North DFW ("Plaintiff") is a Texas limited liability company with its principal place of business in Collin County, Texas. Plaintiff may be served by means of the undersigned counsel.

9.  Defendant Tiffany Swartz aka Tiffany Yordy nka Tiffany Tavernier ("Swartz") is an individual who conducts business in the State of Texas, but does not maintain in Texas a regular place of business or any agency for service of process. As such, Swartz may be served through the Texas Secretary of State in accordance with Texas Civil Practice and Remedies Code Section 17.044, which requires that duplicate citations be issued to the Secretary of State for service of this Defendant at her home address of 1723 Southwest Mawrcrest Avenue, Gresham, OR 97080.

10. Defendant Swartz Brokerage, LLC ("Swartz Brokerage") is a Texas limited liability company and may be served with process of service through its registered agent, United States Corporation Agents, Inc., 9900 Spectrum Drive, Austin, Texas 78717.

11. Defendant Scott W. Hartman ("Scott Hartman") is an individual residing in Dallas County, Texas. This Defendant has appeared through the listed counsel of record.

12. Defendant Hartman Investments LLC ("Hartman Investments") is a Delaware limited liability company with its principal place of business in Collin County. This Defendant has appeared through the listed counsel of record.

13. Advantage Business Brokers LLC ("Advantage Business Brokers") is a Texas

# Exhibit A

limited liability company with its principal place of business in Collin County. This Defendant has appeared through the listed counsel of record.

## V.
## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court because the amount in controversy exceeds this Court's minimum jurisdictional limit.

15.     Venue is proper in this county given the parties' selection of Dallas County as the exclusive venue for all proceedings relating to the Independent Contractor Agreement, as provided in Section 23 of that agreement.   In the alternative, a substantial part of the events or omissions giving rise to the claims occurred in Dallas County, Texas.

## VI.
## FACTUAL BACKGROUND

**Plaintiff Purchased the Business from Tiffany Swartz and Swartz Brokerage, LLC**

16.     On or about May 15, 2018, for valuable monetary consideration, Plaintiff closed on the purchase of the business brokerage franchise called Transworld Business Advisors of North DFW.   The terms of the transaction were memorialized in a particular Purchase Agreement ("Purchase Agreement") with an Effective Date of May 15, 2018 between Tiffany Swartz and Swartz Brokerage, LLC (collectively "Seller") and Vicki Wallace and VL Wallace Investments, LLC (collectively "Purchaser").

**The Consideration Included Covenants Restricting Tiffany Swartz**

17.     As an integral part of the sale transaction, and in support of the premium amount paid, which Plaintiff paid for the purchase of these assets, Defendant Tiffany Swartz as Seller, entered into the following non-compete covenant to Plaintiff in Section 14(e) of the Purchase Agreement:

# Exhibit A

<u>Non-competition.</u>

(i)     *Seller hereby agrees that* from the date of Closing through the date which is the later of (x) five (5) years following the Effective Date of this Agreement and (y) two (2) years following the Termination of Services Date, *Seller and their affiliates*, including any entity or partnership which is owned in whole or in part by either Seller, *shall not, in the State of Texas* (the "<u>Restricted Area</u>"), absent the written, prior consent of Purchaser, (A) *directly or indirectly invest in, own, manage, operate, finance, participate in*, control, advise, render services to, be employed by, or serve as a consultant to, guarantee the obligations of, acquire a financial interests in any Person engaged in or planning to become engaged *in, the Business or a business in direct competition with the Business, including any activities involving the business brokerage industry and the listing, promotion and purchase and sale of third party businesses (collectively, the "<u>Restricted Work</u>")*: (B) interfere, directly or indirectly, with business relationships (whether formed before or after the date of this Agreement) between Purchaser and its customers and clients, or otherwise encourage such customers or clients to cease to be a customer or client of Purchaser or encourage such customers or clients to do business with Purchaser's competitors; (C) participate in the contacting, solicitation, maintenance or servicing of any customer of Purchaser; or (D) work independently to perform Restricted Work in the Restricted Area or hire or solicit on Seller's behalf or any third party's behalf, any of Seller's or Purchaser's employees, agents, or contractors to perform Restricted Work in the Restricted Area. Seller acknowledges that Purchaser would not enter into this Agreement and would not purchase the Purchased Assets if Seller did not agree to and comply with the provisions of this Section 14(e).

(ii)    It is expressly understood and agreed that although Seller and Purchaser consider the restrictions contained in this Section 14(e) to be reasonable, if a final judicial determination is made by a court of competent jurisdiction that the time or territory or any other restriction contained in this Agreement is a restriction not enforceable against Seller, then provisions of this Agreement shall not be rendered void but shall be deemed amended to apply as to such maximum time and territory and to such maximum extent as such court may judicially determine or indicate to be enforceable. Alternatively, if any court of competent jurisdiction finds that any restriction contained in this Section 14(e) is unenforceable, and such restriction cannot be amended so as to make it enforceable, such finding shall not affect the enforceability of any of the other restrictions contained herein.

(iii)   Seller agrees that if it or any of its affiliate engages or threatens to engage in any activity that constitutes a violation of the provisions of this Section 14(e), Purchaser shall have the right and remedy to have the provisions of this Agreement specifically enforced to the extent permitted by law or by any court having jurisdiction, it being acknowledged and agreed that any breach of this Agreement would cause immediate irreparable injury to Purchaser and that money damages would not provide an adequate remedy at law for any breach. Such right and remedy shall be in addition to, and not in lieu of, any other rights and remedies available to Purchaser at law or in equity.

(iv)    The provisions of this Section 14(e) shall survive Closing.

(Purchase Agreement, pp. 14-15, Section 14(e) (italics added for emphasis).)

# Exhibit A

18.     The restricted territory of the State of Texas is reasonable, particularly given that the non-compete covenant was the principal value-adder to this sale of an ongoing business. In addition, Ms. Swartz sometimes is domiciled in the State of Oregon and thus has potential business opportunities outside of the State of Texas, which are not prohibited. The restricted business activity of "the business brokerage industry and the listing, promotion and purchase and sale of third party businesses" is reasonable, given that Swartz is allowed much latitude to make a living in other business pursuits. In a sale transaction, this time duration is reasonable as necessary for the legitimate purpose of protecting the goodwill and confidential information of the business sold to Plaintiff from the very person who sold Plaintiff the business.

19.     As an important feature of the sale transaction, Defendant Tiffany Swartz personally agreed to continue working as a producing Salesperson for the Transworld business under the terms of a particular Independent Contractor Agreement Between Broker and Salesperson ("Independent Contractor Agreement") effective as of May 15, 2018. It would stand to reason that Ms. Swartz would become an even more dominant business producer when freed from the responsibilities of owning the business. Thus, in Section 21 of the Independent Contractor Agreement, Ms. Swartz agreed as follows:

> During the term of this Agreement and for a period of five (5) years thereafter, *Salesperson shall not*:
>
> a.  Directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent independent contractor or stockholder, member or partner of any company or business organization, *engage in any business brokerage activity in competition with the services provided by the Broker* in any county in which Broker conducts business.
>
> b.  In any capacity, either separately, jointly or in association with others, directly or indirectly, solicit, induce, attempt to hire, or hire any of the Broker's employees, consultants agents, suppliers, clients, customers or prospects that were such with respect to the Broker at any time during the one year immediately preceding the date of the Agreement's termination or that become such with respect to the Broker at any time during the one (1) year immediately following the date of the Agreement's termination, or assist in such hiring by any other

person or business entity or encourage any such employee to terminate his or its relationship with the Broker.

   c.    *Divert or attempt to divert from the Broker the business or patronage of any of its customers, clients or accounts or any prospective customers or accounts* that were such with respect to the Broker during the term of the Agreement and on whose matters Salesperson worked during the term hereof.

(Independent Contractor Agreement p. 3, Section 21 (italics added for emphasis).)

20.     The territory of this non-compete covenant is restricted to "business brokerage activity . . . in any county in which Broker conducts business," which is a geographical area consisting of seven franchise areas. Upon completion of the all-Texas territory restriction under the Purchase Agreement, that seven-territory restriction would be reasonable; yet, at the present, Ms. Swartz is still subject to the full-state restriction, which is particularly reasonable given that the transaction was for the sale of the assets of an ongoing business. The restriction as to the business brokerage industry is narrow enough such that Ms. Swartz can still make a living. In a sale transaction, this time duration is reasonable as necessary for the legitimate purpose of protecting the goodwill and confidential information of the business from any threats from the very person who sold Plaintiff the business.

21.     The Purchased Assets acquired by Plaintiff included "all . . . documents, paperwork, and other records that relate to the operation of the Business, the Intellectual Property and the Tangible Personal Property, including all documents provided by Franchisor to Seller, including marketing lists, business lists and data, marketing materials and manuals." (Purchase Agreement p. 2, Section 1(g).) As a reasonable means for Plaintiff to protect the value of these Purchased Assets, Defendant Tiffany Swartz agreed: "Seller shall treat as confidential, and not disclose without Purchaser's written consent, any information regarding the Sale Transaction, the Purchased Assets or Purchaser . . . ." (Purchase Agreement p. 18, Section 16.)

# Exhibit A

**Tiffany Swartz Decided Wrongfully to Take What Belonged to Plaintiff**

22.     Despite the above-cited covenants made by Tiffany Swartz in the Purchase Agreement and in the Independent Contractor Agreement, Ms. Swartz embarked on a campaign (shortly after the transaction) to steal the customers of Plaintiff and to compete unlawfully (even while a Salesperson for Plaintiff), in some instances with the use of Plaintiff's own Confidential forms.

23.     In her own words under oath, Ms. Swartz "started transitioning out of [Transworld] when I decided to go over to Advantage [Business Brokers] . . . starting about three months ago . . . probably about December, November [2018] maybe." (Transcript of Deposition of Tiffany Swartz, p. 20, given on February 25, 2019 in the case styled as *Chapter Two Enterprises, Inc. v. Scott Hartman and Hartman Investments, LLC* as Cause No. 429-05086-2018 pending in the 429th District Court of Collin County, Texas.) Remarkably, this was just six to seven months after she sold the business to Plaintiff, and well within the restriction periods imposed by the Purchase Agreement and Independent Contractor Agreement. In such a short time, she could not possibly have forgotten her covenants.

24.     In her sworn deposition, Ms. Swartz characterized her work with Defendant Scott Hartman's newly-acquired Advantage Business Brokers as "some side work as a business broker . . ." (Swartz Deposition p. 11.) Notably, the scope of her work for Advantage Business Brokers was identical to that for which she was committed to Plaintiff: "I help, you know, list business for sale. Work as part of a team with two other people . . . Businesses reach out to me looking to sell their business. So I meet with them . . . Putting buyers and sellers together, things of that nature." (Swartz Deposition pp. 11-13.) Unbelievably, as of her February 2019 deposition (just nine months after the commencement of her Independent Contractor Agreement with Plaintiff), Ms. Swartz denied altogether that she was employed by any other business. (Swartz Deposition p. 12.)

# Exhibit A

(This is made more startling for the fact that Plaintiff paid Ms. Swartz a commission as recently as December 2019.)

25.     In an email of May 1, 2019, Defendant Scott Hartman exuded the depth of the couple's connection: "You and I will create a great company and more importantly you and I will be life long friends!!!"

**For Starters, Swartz Stole Plaintiff's Business Forms**

26.     As a foundational part of her scheme, Ms. Swartz built her bank of business forms on the back of Plaintiff and its franchisor.  Ms. Swartz copied nearly word-for-word and line-by-line the Confidential business forms.  From her email address with Plaintiff (tswartz@tworld.com), she launched several Confidential business forms, which she had converted to show the banner for Advantage Business Brokers (The Yordy Acosta Group).  These Confidential documents included Plaintiff's forms entitled:   Business Profile / Seller Questionnaire; Marketing Agreement; and Broker Confidentiality Agreement with Seller.

**Swartz Stole Plaintiff's Listings for the Sale of Client Businesses**

27.     While a Salesperson for Plaintiff (and thus fully within the restricted period under both the Purchase Agreement and the Independent Contractor Agreement), Ms. Swartz represented the clients of Plaintiff which had listed their businesses for sale with Plaintiff.  By way of example, she closed sale transactions for Plaintiff's clients, Imperial Maids, Salerno's Restaurant, and Wolf Collections, with no compensation being paid to Plaintiff.

28.     The sale of the Imperial Maids business closed on January 31, 2020.   This transaction was the subject of a signed Marketing Agreement with Plaintiff, which was counter-signed by Vicki Wallace as "Officer" of Plaintiff and counter-signed by Ms. Swartz as "Agent" for Plaintiff.  This transaction had been featured by Plaintiff in a Confidential Business Summary, which procured a particular letter of intent, which in turn, matured into this sale.

# Exhibit A

29.     The sale of Salerno's Restaurant, upon information and belief, closed on or about January 31, 2020.   Similar to Imperial Maids, the seller contracted with Plaintiff.   However, subsequent to that contract, Ms. Swartz "moved" the seller to Defendant Advantage Business Brokers (The Yordy Group), as evidenced by a Broker's Confidentiality Agreement with Seller and a letter of intent.    Nonetheless, throughout the transaction, Ms. Swartz utilized her "tswartz@tworld.com" email address as her means of contact.

30.     Even exclusive listings mentioned in the transaction documents were not safe from Ms. Swartz's raid.   Though the listing with Wolf Collections was expressly identified as a Purchased Asset, Swartz closed that high-dollar transaction, with no compensation being paid to Plaintiff.

31.     Yet, that's not all.  Also in 2020, Defendant Tiffany Swartz has approached other clients which are under exclusive listing agreements with Plaintiff.  (Given the confidential nature of these pending transactions, the identity of the seller and business is not revealed in this pleading.)   In an effort to procure a willing buyer, Ms. Swartz has made presentations to these clients of Plaintiff on documents bearing the banner of Defendant Advantage Business Brokers (Yordy Group).

## Swartz Has Usurped Other Business Brokerage Opportunities

32.     On July 30, 2018, Defendant Tiffany Swartz agreed to co-broker (splitting commissions 50/50) the sale of a metal works business for a list price of $3,500,000.   While it is unclear what transpired in the interim, on February 6, 2020, the 2019 financials for the business were provided to Ms. Swartz at her email address for Plaintiff (tswartz@tworld.com).   Upon information and belief, Ms. Swartz has participated (or is participating) in the sale of the metal works business, though no compensation has been paid to Plaintiff.

33.     On December 7, 2018, Defendant Tiffany Swartz signed a Marketing Agreement

# Exhibit A

on behalf of Defendant Advantage Business Brokers with a seller of an Irving-based limited liability company with a list price of $300,000. Needless to say, Plaintiff has seen no compensation from that transaction (if it in fact has closed).

34.  On July 8, 2019, Ms. Swartz signed a Buyer Representation Agreement (displaying the banner of Defendant Advantage Business Brokers). The prospective buyer was interested in purchasing a laundromat. Upon the prospective buyer signing the form, Joseph Yordy sent the fully-executed agreement to Ms. Swartz at tswartz@tworld.com.

35.  On October 4, 2019, Ms. Swartz published a Confidential Business Summary showing for Imponente Pizza & Pasta LLC, showing herself as the listing broker at Defendant Advantage Business Brokers. Her email message showing the presentation was launched from her email address with Plaintff (tswartz@tworld.com), along with her signature block as "Senior Business Advisor/Broker at Transworld Business Advisors of North DFW" at Plaintiff's address.

36.  By competing in the same space, and by attempting to divert business from Plaintiff, Defendant Tiffany Swartz has committed brazen violations of the above-cited provisions of the Purchase Agreement and the Independent Contractor Agreement. In terms of proof, it is not ultimately necessary for Plaintiff to show that the deals initially were booked as the listings of Plaintiff; nonetheless, that background underscores the egregious conduct of Defendant Tiffany Swartz – her total disregard for the rule of law.

37.  As a result of the above-described conduct, all of which constitutes a material breach of the Purchase Agreement, Plaintiff withheld the final installment payment of $10,000, which had been due by December 15, 2019. The next day, upon Plaintiff's principal confronting Ms. Swartz with the now-apparent truth, Ms. Swartz said she "quit" and then she wrongfully removed and stole two computer monitors and a mirror from Plaintiff's offices.

38.  As a continued act of reprisal against Plaintiff, to this day, Ms. Swartz holds herself

out on LinkedIn as the "CEO at Transworld Business Advisors of North DFW." She has not been the CEO since the asset sale of May 15, 2018. She has not been with Transworld since she quit on December 16, 2019.

## VIII.
## CAUSES OF ACTION

### COUNT 1 – Breach of Contract (Tiffany Swartz and Swartz Brokerage)

39.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

40.     There are two valid, enforceable contracts: (a) the Purchase Agreement; and (b) the Independent Contractor Agreement, which set out specific non-compete covenants and confidentiality obligations.

41.     Plaintiff is the proper party to bring suit for breach of these contracts.

42.     Plaintiff has performed, tendered performance of, or was excused from performing its contractual obligations.

43.     The non-compete covenants (contained within the Purchase Agreement and the Independent Contractor Agreement) meet the following criteria:  (a) they are ancillary to an otherwise valid transaction, specifically the sale transaction by which Swartz sold her business to Plaintiff, which gives rise to an interest worthy of protection; (b) the restraint is not greater than necessary to protect Plaintiff's legitimate interest in its goodwill and confidential information; it is appropriately limited as to time, territory, and type of activity; and (c) Plaintiff's need for protection is not outweighed by either the hardship to Plaintiff nor any injury likely to the public.

44.     Given that the non-compete covenants were given in consideration of the sale of a business, they have a primary purpose different than for the rendering of personal services. Accordingly, Swartz has the burden of establishing that these covenants do not meet the above-

# Exhibit A

stated three criteria, which burden Swartz cannot sustain.

45.     In the unlikely event that the non-compete covenants are not appropriately limited, Plaintiff requests that this Court (sitting in equity) modify and enforce the covenants to the extent necessary to protect Plaintiff's legitimate business interests.

46.     By the above-described conduct, Tiffany Swartz and Swartz Brokerage have materially breached Section 14(e) of the Purchase Agreement and Section 16 of the Purchase Agreement.

47.     By the above-described conduct, Tiffany Swartz has materially breached Section 21 of the Independent Contractor Agreement.

48.     As a result of these breaches, Plaintiff has sustained direct damages, consequential damages, and incidental damages, including but not limited to the loss of net income, which Plaintiff is entitled to recover from Swartz and Swartz Brokerage.

49.     As a result of these breaches, Plaintiff was compelled to retain the undersigned legal counsel.  Pursuant to Section 17(l) of the Purchase Agreement and Section 23 of the Independent Contractor Agreement, Plaintiff is entitled to recover reasonable attorney's fees and costs from Swartz and Swartz Brokerage.

50.     In addition, pursuant to Section 17(l) of the Purchase Agreement, Plaintiff is entitled to recover expert witness fees from Swartz and Swartz Brokerage.

51.     Finally, pursuant to Section 23 of the Independent Contractor Agreement, Plaintiff is entitled to recover expenses from Swartz.

## COUNT 2 – Breach of Fiduciary Duty (Tiffany Swartz)

52.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

53.     While a Salesperson for Plaintiff, Tiffany Swartz has owed Plaintiff a formal

# Exhibit A

fiduciary duty, including a duty of loyalty and utmost good faith, a duty of candor, a duty to refrain from self-dealing, a duty to act with integrity of the strictest kind, a duty of fair and honest dealing, and a duty of full disclosure.

54.     Despite these commonly-understood fiduciary duties, Swartz has actively worked to compete with Plaintiff, to divert business away from Plaintiff to herself and to Advantage Business Brokers, and to hide the truth.  Given the self-interested nature of Swartz's actions, the burden of proof shifts to Swartz to prove that:

    a.     The transactions in question were fair and equitable to Plaintiff; and

    b.     Swartz made reasonable use of the confidence that Plaintiff placed in her; and

    c.     Swartz acted in the utmost good faith and exercised the most scrupulous honesty toward Plaintiff; and

    d.     Swartz placed the interests of Plaintiff before her own, did not use the advantage of her position to gain any benefit for herself at the expense of Plaintiff, and did not place herself in any position where her self-interest might conflict with her obligations as a fiduciary; and

    e.     Swartz fully and fairly disclosed all important information to Plaintiff concerning the transactions.

55.     In addition, Swartz has usurped company opportunities of Plaintiff by taking business, which was the reasonable expectancy of Plaintiff.

56.     Swartz's breaches of fiduciary duty have resulted in injury to Plaintiff.

57.     Plaintiff is entitled to recover from Swartz direct damages, consequential damages, and incidental damages, as well as profit disgorgement and fee forfeiture.  As a result, Plaintiff seeks an accounting and return of funds including, but not limited to, the return of all compensation paid by Plaintiff to Swartz and all compensation paid by others to Swartz and Advantage Business Brokers (as a result of Swartz's actions during the ongoing period of disloyalty).

58.     Plaintiff will establish by clear and convincing evidence that Swartz's fiduciary

# Exhibit A

breaches were committed with malice, that is a specific intent to cause substantial injury or harm to Plaintiff. Accordingly, Plaintiff will be entitled to recover exemplary damages from Swartz pursuant to Texas Civil Practice & Remedies Code Section 41.003(2).

## COUNT 3 – Malicious Conversion of Personal Property (Tiffany Swartz)

59.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

60.     Plaintiff owned, possessed, and had the right to possession of particular personal property, specifically the two computer monitors and the mirror.

61.     Defendant Tiffany Swartz wrongfully exercised dominion or control over that property.

62.     As a result, Plaintiff has suffered injury.

63.     Plaintiff will establish by clear and convincing evidence that Defendant committed this conversion with malice, that is a specific intent to cause substantial injury or harm to Plaintiff. Accordingly, Plaintiff will be entitled to recover exemplary damages from Swartz pursuant to Texas Civil Practice & Remedies Code Section 41.003(2).

## COUNT 4 – Violation of Texas Theft Liability Act (Tiffany Swartz)

64.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

65.     Defendant Tiffany Swartz committed theft against Plaintiff by unlawfully appropriating personal property, specifically the two computer monitors and the mirror.

66.     Pursuant to Section 134.003(a) of the Texas Civil Practice & Remedies Code, Ms. Swartz is liable for the damages to Plaintiff resulting from the theft.

67.     Pursuant to Section 134.005(a)(1) of the Texas Civil Practice & Remedies Code, *in addition*, as a civil penalty, Ms. Swartz is liable to Plaintiff in an amount equal to the damages

awarded by the trier of fact in a sum not to exceed $1,000.

68.     Pursuant to Section 134.005(b) of the Texas Civil Practice & Remedies Code, in addition, Ms. Swartz is liable to Plaintiff for court costs and reasonable and necessary attorney's fees.

## COUNT 5 – Business Disparagement (Tiffany Swartz)

69.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

70.     Every day since the time of her resignation on December 16, 2019, Swartz has falsely published on LinkedIn to the business community (in which she operates) that she is still associated with Plaintiff as the "CEO at Transworld Business Advisors of North DFW."  Swartz has not been associated with Transworld since December 16, 2019 when she quit.  Nor has Swartz been the CEO of the company since the sale date of May 15, 2018.  These constant, disparaging communications are detrimental to Plaintiff's economic interests, as undermining the brand of the company and the leadership of its principal.

71.     The cited words are clearly false.

72.     Swartz published the words with malice – to spite Plaintiff and its principal.

73.     Swartz published the words without privilege.

74.     The publication has caused and continues to cause special damages to Plaintiff.

## COUNT 6 – Tortious Interference with Contract (Advantage Business Brokers, Hartman Investments, and Scott Hartman)

75.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

76.     Both the Purchase Agreement and the Independent Contractor Agreement are valid, enforceable contracts, which are subject to interference.

# Exhibit A

77.     Advantage Business Brokers, Hartman Investments, and Scott Hartman committed multiple acts of interference which were willful and intentional, given that there was a manifest desire to interfere with these contracts, or alternatively, given that there were acts done with the belief that interference was substantially certain to result.

78.     The interference prevented the performance of the contracts, or alternatively, made performance of such contracts more burdensome or more difficult.

79.     The acts were a proximate cause of Plaintiff's damages, including consequential damages and incidental damages.

## COUNT 7 – Knowing Participation in Breach of Fiduciary Duty (Advantage Business Brokers, Hartman Investments, and Scott Hartman)

80.     Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

81.     Advantage Business Brokers, Hartman Investments, and Scott Hartman knew that Swartz owed fiduciary duties to Plaintiff.  These Defendants knowingly participated in the breaches of fiduciary duty committed by Swartz, and by doing so, aided and abetted in the breaches.

82.     As a result, these Defendants are liable with Swartz as joint tortfeasors, and thus, are jointly and severally liable for the damages caused to Plaintiff, including direct damages, consequential damages, and incidental damages, as well as profit disgorgement and fee forfeiture. As a result, Plaintiff seeks an accounting and return of funds including, but not limited to, the return of all compensation paid by Plaintiff to Swartz and all compensation paid by clients to Swartz and/or Advantage Business Brokers (as a result of Swartz's actions during the ongoing period of disloyalty).

83.     Plaintiff will establish by clear and convincing evidence that the knowing

participation in breach of fiduciary duty was committed with malice. Accordingly, Plaintiff will be entitled to recover exemplary damages from these Defendants pursuant to Texas Civil Practice & Remedies Code Section 41.003(2).

## COUNT 8 – Civil Conspiracy (All Defendants)

84.    Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

85.    All Defendants are members of a combination of two or more persons.

86.    The object of the combination was to accomplish: (a) an unlawful purpose; or (b) a lawful purpose by unlawful means.

87.    The members had a meeting of the minds on the object or course of action.

88.    One of the members committed an unlawful, overt act to further the object or course of action. The unlawful, overt acts include the above-described breaches of fiduciary duty, conversion, theft, and business disparagement.

89.    As a proximate result of the wrongful acts, Plaintiff has suffered direct damages, consequential damages, and incidental damages, which it is entitled to recover from all Defendants jointly and severally.

90.    Plaintiff will establish that it is entitled to recover exemplary damages from all Defendants, which participated in this civil conspiracy, pursuant to Texas Civil Practice & Remedies Code Section 41.003(2).

## COUNT 9 – Injunctive Relief

91.    Pursuant to Rule 58 of the Texas Rules of Civil Procedure, Plaintiff reasserts the allegations contained in the above paragraphs as if fully set forth herein.

# Exhibit A

## Application for Temporary Injunction

92.     There is a substantial likelihood that Plaintiff will prevail on the merits because of the unlawful behavior of Defendants in causing damages for which there is no adequate remedy at law.

93.     Plaintiff has no adequate remedy at law for the injuries just described.  Injunctive relief under these circumstances is allowed under Texas Civil Practice & Remedies Code Sections 65.011.

94.     It is essential that the Court temporarily restrain Defendants during the pendency of the case because Plaintiff's rights are threatened due to Defendants' actions.

95.     As contemplated by Section 14(e) of the Purchase Agreement, Swartz has agreed that "any breach of this Agreement would cause immediate irreparable injury to Purchaser and that money damages would not provide an adequate remedy at law for any breach."  (Purchase Agreement, p. 15, Section 14(e).)

96.     Also as contemplated by Section 23 of the Independent Contractor Agreement, Swartz has agreed that "money damages alone will not adequately compensate Broker [Plaintiff] for breach of any covenants and agreements herein and, therefore, agrees that in the event of a breach or threatened breach of any such covenant or agreement contained herein, Broker [Plaintiff] may obtain, in addition to any such other legal remedies which may be available, obtain such equitable relief as may be necessary to protect Transworld against any such breach or threatened breach, including, without limitation, injunctive relief and/or specific performance compelling compliance with the terms herein."  (Independent Contractor Agreement, p. 3, Section 23.)

97.     In order to preserve the status quo and the rights of Plaintiff during the pendency of this action, Defendants should be cited to appear and show cause why they should not be temporarily restrained, during the pendency of this action, from: (a) all Defendants appropriating

Plaintiff's Confidential information and materials including forms; (b) all Defendants posting or otherwise publicizing (through correspondence, forms, internet postings, social media such as LinkedIn, verbally, or otherwise) that Swartz is associated with Transworld Business Advisors or is the CEO of Plaintiff; (c) Swartz competing in the State of Texas in the "business brokerage industry and the listing, promotion and purchase and sale of third-party businesses" and interfering between Plaintiff and its customers or contacting those customers; and (d) all Defendants other than Swartz assisting Swartz in, or benefiting from Swartz, competing in the State of Texas in the "business brokerage industry and the listing, promotion and purchase and sale of third-party businesses" and interfering between Plaintiff and its customers or contacting those customers.

98.     Plaintiff is willing to post the required bond prescribed by the Court.  Plaintiff requests that the bond be set at a *de minimis* amount.

**Application for Permanent Injunction**

99.     Plaintiff asks the Court to set its application for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants enjoining them from:     (a) all Defendants appropriating Plaintiff's Confidential information and materials including forms; (b) all Defendants posting or otherwise publicizing (through correspondence, forms, internet postings, social media such as LinkedIn, verbally, or otherwise) that Swartz is associated with Transworld Business Advisors or is the CEO of Plaintiff; (c) Swartz competing in the State of Texas in the "business brokerage industry and the listing, promotion and purchase and sale of third-party businesses" and interfering between Plaintiff and its customers or contacting those customers; and (d) all Defendants other than Swartz assisting Swartz in, or benefiting from Swartz, competing in the State of Texas in the "business brokerage industry and the listing, promotion and purchase and sale of third-party businesses" and interfering between Plaintiff and its customers or contacting those customers, for a length of time reflective that Swartz's violations

# Exhibit A

of the restrictions automatically toll and suspend the period of restraint for the amount of time that the violations continues.

100.    Plaintiff believes that it has joined all indispensable parties under Rule 39 of the Texas Rules of Civil Procedure.

## **PRAYER**

WHEREFORE Plaintiff VL Wallace Investments, LLC dba Transworld Business Advisors of North DFW prays that upon trial, the Court enter judgment in its favor and against Defendants Tiffany Swartz aka Tiffany Yordy nka Tiffany Tavernier; Swartz Brokerage, LLC; Scott W. Hartman; Hartman Investments LLC; and Advantage Business Brokers LLC as follows:

1. An award of actual damages and the injunctive relief specified herein;

2. In the alternative, and in the unlikely event that the scope of the non-compete provisions is not reasonable or is judged to be greater than necessary to protect Plaintiff's legitimate business interests, then reformation of the non-compete provisions so that they are enforceable;

3. An award of exemplary damages as allowed by law against Tiffany Swartz and against those Defendants found to have participated with him in a civil conspiracy;

4. An award of reasonable attorney's fees and costs pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, pursuant to Section 17(l) of the Purchase Agreement, pursuant to Section 23 of the Independent Contractor Agreement, and pursuant to Section 134.005(b) of the Texas Civil Practice & Remedies Code;

5. An award of expert witness fees pursuant to Section 17(l) of the Purchase Agreement;

6. An award of expenses pursuant to Section 23 of the Independent Contractor Agreement;

7. Pre-judgment and post-judgment interest, as allowed by law; and

8. All other relief at law and equity to which Plaintiff may be entitled.

# Exhibit A

Respectfully submitted,

**Cherry Petersen Landry Albert LLP**

By: /s/ Craig A. Albert
        Craig A. Albert
        Texas Bar No. 00790076
        Email: calbert@cplalaw.com

8350 North Central Expressway, Suite 1500
Dallas, Texas 75206
(214) 265-7007 Telephone
(214) 265-7008 Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record, via electronic filing, on July 2, 2020.

Francis B. Majorie
The Majorie Firm Ltd.
1450 Cottonwood Valley Court
Irving, Texas 75038
Email: fbmajorie@themajoriefirm.com
Counsel for Scott W. Hartman, Hartman Investments and Advantage Business Brokers

/s/ Craig A. Albert
Craig A. Albert